May it please the Court, Mike Reif on behalf of Blockbuster, this is another arbitration class waiver agreement case, but I think we have a very unique case today. We have a very unique plaintiff and we have a very unique set of circumstances surrounding the formation of the contract. It's undisputed that Ms. Creighton, the plaintiff here, is a... You know, unique means one of a kind. I'm sorry? You know what unique means? One of a kind. Unique. Fair enough. In Oregon, this will be a one of a kind case. In California, it's not, though. In Oregon, Oregon cases have not actually faced a situation like this where you have a legally sophisticated plaintiff along with marketplace alternatives. And both of those are undisputed, including a plaintiff who says she distinctly recalls reading carefully the arbitration agreement at issue. Based on that record, the court below determined that there was no showing of procedural unconscionability. And we completely agree with that aspect of the court's opinion. Our disagreement with the court's opinion relates to what I believe is a threshold question on appeal, and that's whether Ms. Creighton must show some type of procedural unconscionability before she can undo a contract as being unconscionable. But before I get into that, I did want to spend just a minute or two giving the court a little some of these undisputed facts into context. When we originally filed our motion to compel arbitration, Creighton realized that we did not have her membership agreement, her signed one, anymore. They disposed of those. And so she filed a declaration saying she didn't remember what she signed when she signed up at Blockbuster, and her position to the court was, Blockbuster cannot prove up the existence of an arbitration agreement. We then had to go through the hoops in the process of proving up factually and legally that in order for her to be renting at Blockbuster, she must have signed the arbitration agreement and membership agreement. Then the court set a hearing. On the eve of that hearing, Ms. Creighton filed a second recall signing anything. She then testified that she distinctly recalled the membership agreement. And in fact, she distinctly recalled putting the words, do not, next to the arbitration clause. So hearing that for the first time on the eve of the motion to compel arbitration hearing, the judge said, you guys need to go out and go take some discovery on the formation of the contract. That's why we have, in our case, such a developed record on appeal relating to the formation of the contract. After both sides took discovery, the trial court ultimately held that to the extent Ms. Creighton really did put do not in there, that was not effective change because it was barely visible to the eye, and also Ms. Creighton did nothing to present it to Blockbuster and let them know what she did. So the court did agree that she's bound by an arbitration and class waiver provision subject to her unconscionability defense. Now, during the discovery phase, we learned several very key facts that are very relevant to the procedural unconscionability issue, including that Ms. Creighton is an attorney with professional experience litigating the enforceability of arbitration clauses. Ms. Creighton is a legally sophisticated consumer, as sophisticated as any plaintiff could be relating to a contract like this. Ms. Creighton agrees and admits that she carefully read the membership agreement. In her brief, Ms. Creighton concedes that she had marketplace alternatives to renting videos at Blockbuster. Ms. Creighton could have easily avoided Blockbuster's arbitration clause by renting at a different place. In fact, the Hollywood video just down the street from the Blockbuster did not require individual arbitration. And for procedural unconscionability, the focus has always been on surprise and oppression. Here we have neither surprise nor oppression. Now, like I mentioned up front, the appellate courts in Oregon, they have not seen a case like this. The California courts have. And Dean Witter gives us some guidance on this issue. And Dean Witter, this court knows it well. The plaintiff was a sophisticated lawyer with other marketplace alternatives. And the appellate decision there determined that the sophistication plus the marketplace alternatives defeated a claim for unconscionability. Dean Witter has been analyzed and debated over and over again, including by this court in the Negrompa case. And in Negrompa, the en banc court tackled this issue and addressed the issue of whether is marketplace alternatives by itself enough to defeat unconscionability. Those cases you're talking about, one is a sophisticated investor purchasing stocks in the market, another Negrompa, was a franchisee. These kinds of contracts here we're talking about, people go in and rent a movie or whatever you do, a video for a couple of bucks. And there's standard forms. Now, I understand your argument. You could say, you know, this person should lose, but everybody else who goes to Blockbuster would win. You could make that argument. I'm not saying it's not an argument, but that's what you're really saying is that 99.5% of the people who go in and sign this contract are going to win. But this lawyer who goes in is going to lose, and we ought to have a different rule for her. Well, for Blockbuster, Your Honor, the arbitration clause actually hasn't been in there that long. It's been in there since 2001. So there's actually a ton of members who are not even bound by a class waiver. And so, yes, we are dealing with only those plaintiffs who are bound by a class waiver. And you're exactly right. This is a very, very unique situation, just like Dean Witter. Fair enough. I'm going to stop. I'm being redundant. Unique. Unique in Oregon. Not unique in California. And Dean Witter is a lawyer. And Trump explains and struggled with this issue of whether marketplace alternatives is enough. And they said, alone, it is not enough. But then they go on and talk about Dean Witter and distinguish Dean Witter and explain that in combination, if you have a sophisticated lawyer plus marketplace alternatives, then you can defeat unconscionability. And that's what those cases who have struggled with Dean Witter and have upheld the limited ruling of Dean Witter, which I think applies here, where you have exactly that, a legally sophisticated plaintiff plus tons of marketplace alternatives. And there's no reason I think the Oregon Supreme Court's going to analyze that issue any differently than the California courts have when you are faced with no surprise, no oppression, a legally sophisticated plaintiff and marketplace alternatives. Now, in an effort to avoid this entire procedural unconscionability analysis, Ms. Creighton argues that it's not even required under Oregon. But she even has a hard time pressing that too hard. They cite some loose language and some dicta in Vasquez Lopez for that. But remember, Vasquez Lopez actually involved a significant degree of procedural unconscionability. There you had the two non-English speaking plaintiffs, a clause that was in English, and then you had actual evidence of misleading conduct relating to that clause. The court in Vasquez Lopez was not trying to say that you don't need procedural unconscionability. The court was trying to say that that's not enough. You need something more. You need some substantive. You won on procedural unconscionability, didn't you, in the district court? So why are you buying it back now? Your Honor, because of the district courts where I think the district court misstepped. The district court correctly held no procedural unconscionability. But then it went on to say it's not required. And that's where we differ. The district court found that there was a substantive unconscionability in the class action part. Right. And that when you have that under Oregon law, as I think I read Oregon law, you don't have to reach procedural unconscionability because you've got, if you have massive substantive unconscionability, you just go right to the juggler and go after that. You don't need to worry about the procedure or whether the people were sophisticated or blind drunk when they signed the contract. And that's the precise issue that I disagree with under Oregon law. I believe under Oregon law. We can't change Oregon law. That's everything. I don't think, Your Honor, I don't think that is Oregon law at all. In fact, if you go read the Vasquez Lopez case, they cite to a case called Carey. And they cite to Carey and they say the primary focus of unconscionability appears to be relatively clear. Substantial disparity in bargaining power, procedural, combined with terms that are unreasonably favorable to the party with greater power may result in a contract or contractual provisions being unconscionable. Carey, the case that Vasquez Lopez is relying on, is absolutely saying you need both. Just like in California you need both, Carey is saying you need both. And then Carey, also the Supreme Court case in W.L. May is consistent too. There the Oregon Supreme Court explained that the principle of unconscionability is one of the prevention of oppression and unfair surprise. So I think it's actually a very dramatic change in the law to say that you need both. To suggest you don't need procedural unconscionability. That would in fact put Oregon as an outlier. That's completely different than the way it is in California or anywhere, most other places. So I absolutely believe there is a requirement of procedural unconscionability. And that is what makes our case different from the other cases. Without the procedural unconscionability, with a complete lack of procedural unconscionability, there should be no undoing of a contract. It's not a contract. It's no different than if I'm, as a lawyer, walk into a department store, like Sears, and they throw in a class waiver to me and tell me to sign it. Well, I'm, as a lawyer, I know exactly what it means. And I can either just ignore it, throw it away, sign it, or I can just walk down the street or walk down the mall to another department store. I'm legally sophisticated and I have marketplace alternatives. The doctrine of unconscionability should not protect me. I don't know where, you almost always have a marketplace alternative. These cases come up in credit card cases and all of the things that people just do. We're not going to go shopping from credit card to credit card, telephone company to telephone company. Where is it that there isn't any market alternative? Well, I think in the employment context, it's actually, the courts do a very good job in explaining that there is a market alternative. That in an employment context, you're not going to have very few employees ever saying, I'm going to pass up a job because of this arbitration clause. That's not going to happen at all. It's not going to happen if you go to a doctor and the first thing they hand you is an arbitration form. You're not going to go to another doctor. Doctor maybe, maybe not. But actually, in this record, Ms. Creighton actually said she will pass up on things like renting videos over an arbitration clause. So in our fact situation, that's exactly what she says in her deposition. Now, she did say if it was credit, if it was buying a house, if it was a job, then maybe I'd go along with it. But if it was something as silly or as simple or as great as Blockbuster thinks, as renting a video, no. That's not enough. You will pass up and you can pass up. In fact, she says she feels strongly about arbitration clauses and she would pass it up and go right down the street to Hollywood, which does not require individual arbitration. You found the only plaintiff in the world who would have done that. She found you. Maybe. And again, there are members out there who don't have this and there are members out here who are not legally sophisticated attorneys with Hollywood down the street. Even a sophisticated attorney goes into Blockbuster, rents a movie, and doesn't look to see what the arbitration clause is, or doesn't care. Yeah, I know that happens. When I go in to have surgery, you know, just as you're going under the hand. Oh, we forgot to have you sign this. I say, well, all right, I close my eyes and I'm signing it. Everybody's closing their eyes. Okay, here it is. Anyway, it's a contract of adhesion and you got the bargaining power over me because I'm here in the gurney to take it away. Anyway, not you. He's not on your gurney. He's on his doctor's. Yeah, I think then you obviously have a different situation than what we have here where the plaintiff says, I read it. I understood it. I knew what it said. What's the purpose of putting that in here? Putting what in? Well, these arbitration clauses, when you want to rent a movie. I think it's an easy, quick way to resolve real disputes with your customers. And I tell you, if an arbitration is filed, we can resolve this with our customers easily, quickly, and everyone leaves home. Well, if they have to pay a lot of, say, a $700 front money fee to arbitrate a $6 nickel and dime type of pedophagy that goes on in some of these promotional merchandising schemes, they'll never bring the arbitration, so you won't have to worry about it. But the question in the class action area is, do you wipe out any practical remedy if people can't afford it? Collect their cases and bring enough cases to make it worthwhile to contest the practice that is, they think, is cheap, cheating them. And just in practice, I have found the opposite. I have found the class actions have created such a problem in that it almost always involves attorney's fees. Well, we've had a runaway, yeah, we've had a kind of a runaway orgy of class actions. Well, we've had a runaway orgy of class actions recently, and that has created a rebound effect, and now everything is going into arbitration to get away from class actions. Right, and I tell you, all those class actions, 98% of the time we're fighting about attorney's fees. It's all about the attorney's fees. But it's correcting the practices. The money doesn't go to the individual who had to pay a $2 fee. But it does, class actions do correct the practice that an individual action can't correct. I respectfully disagree in some situations. I do believe some situations, yes, some situations, no. And in our case, you actually had the attorney generals jump in on this, and they corrected any kind of concern. Remember, this case is about marketing over a three-month period of their no-late fee. The attorney generals jumped in, the Oregon attorney general. We reached an agreement with the Oregon attorney general. There was a remedy. Both we agreed to improve our marketing, and we agreed to give refunds to anyone who needed a refund, who wanted a refund. It worked there. Something other than class action, which I think is getting abused left and right, something other than class action worked. And it worked here, and it was the attorney general, and it was the ABC. Your Honor, I'm running out of time, and I want to save a couple minutes for rebuttal. Thank you for your time. May it please the Court, I'm Phil Goldsmith for Plaintiff Beth Grayton, and I'm the, I guess, only plaintiff's lawyer here to defend a district court ruling, which clearly is right, based on the Vasquez-Lopez decision. Well, the question is, as counsel said, you found a unique plaintiff who testified she was fully aware of this, and that she knows all about it, and that she wouldn't sign a contract with that in it. Suppose the general rule is you can't have in these form contracts that people, when they rent movies, you can't have a provision on class action. But you find the one plaintiff who says, I know all about this, I'm very careful with it, I'd go to another store. So in no way was she surprised, treated unfairly. Does that change the result, and why not? It doesn't change the result, and that was one of the questions I wanted to address. It doesn't change the result because of how Oregon law has been articulated in Vasquez-Lopez. What Mr. Reif wants to think of as stray comments in the Vasquez-Lopez decision, in fact, is a considered analysis. This is in the P2 version of the case at 948. The court begins by describing how the law is in other jurisdictions. It says in some jurisdictions both elements, procedural and substantive unconscionability, are required. In other jurisdictions, and it cites then to California, in other jurisdictions the courts can invalidate on either procedural or substantive grounds, and it cites to a Washington case, which is a law in Washington. And then after saying that there's been no formal template established in Oregon to date, it ends by saying both procedural and substantive unconscionability are relevant, and then these were the words that Judge King relied on, although only substantive unconscionability is absolutely necessary. So in other words, in evaluating a case, you look to both substantive and procedural unconscionability, but you can find that a contract is substantively unconscionable without any procedural unconscionability. I think that you could find procedural unconscionability here. This is clearly a contract of adhesion. Bachbuster's own evidence showed that it was take it or leave it. You have to get a contract with these terms, and Judge King ultimately ruled that in a ruling that's not subject, given the jurisdiction over arbitration rulings, it can't come before you to be reviewed at this point, that she was bound by the contract, even though she tried not to be. The cases I've cited in the responding brief show that under Oregon decisions, Motzinger and Sprague, that a contract of adhesion establishes a modest amount of procedural unconscionability. But that is not necessary for you to decide that question, because even if you conclude that there's no procedural unconscionability here, the passage I've read to you from Vasquez Lopez says that substantive unconscionability is enough, and it's particularly important, I think, in this context of class action bans. Oftentimes it's necessary for somebody who's sophisticated to figure out that some small cheating practice actually is illegal, and to be willing to stand up for that person and for other people to challenge that practice. And, you know, so that when the vice here is not that Beth Creighton can't get her small amount of money back. If she wanted her small amount of money back, and that was all she wanted, she was sophisticated enough, she knew about the Attorney General's assurance of voluntary compliance with Blockbuster, and that she could get a refund. She wanted to make sure that other people who would not know about the assurance of voluntary compliance procedure would be able to get their restitution of the charges that they had been in our opinion wrongfully charged. Did they get individual relief under the Attorney General's agreement? Well, the Attorney General's agreement, there's two things. The Attorney General's agreement gave them the potential for relief, but didn't create a process by which people would be able to, didn't create a notification process. So if somebody knew about it, they could, they had a 30-day window to request their money back. If they didn't know about it in 30 days, then they couldn't. This was not like a class action where notice would have gone out from the court directing people that they had the right to relief. There was some publicity about it. There's an Oregonian article in the excerpt of record at pages 137 and 138, which was in a prominent place in the paper, and unfortunately misstated badly the amount of time that people had. Told them they had six months when they only had a month. So to the extent there was some public notice, it was wrong public notice. The other thing that's important to know is that the effect of the Attorney General's assurance of voluntary compliance, there's striking evidence in this record. You need to keep in mind that this occurred, the settlement with the Attorney General occurred at the very early stages of this case while it was being litigated. And so Blockbuster obviously had an incentive to know what refunds it had paid out so that it could establish if it paid the class that there was no need for this case. And there's a declaration in this record, it's at page 99 of the excerpt of record of Tom Elden, who was an Assistant Attorney General that represented the state of Oregon in the assurance of voluntary compliance procedure. He asked somebody at Blockbuster for information about the refunds that had been paid to people in Oregon. Sorry, I have to find this here so I say this The response that he was given by the counsel he talked to at Blockbuster was that they did not have, quote, reliable state-by-state information. We also asked an interrogatory, which can be found in the supplemental excerpt of record at page 9, where they say they had no feasible way of determining the refunds they paid. You know, if they'd paid 75 percent of the class refunds, we wouldn't all know that. There's, you can... But essentially the issue in this case is whether substantive unconscionability without procedural unconscionability is sufficient? If you find that there's not procedural unconscionability, yes. That's an issue. There's also, as you've said... Is there such a thing, for instance, I mean the court said procedural, they're both relevant, but only one's necessary. Yes. Is there such a thing as a sort of sliding scale where other than is or isn't procedural unconscionability where it may not be so good, but it doesn't reach the level of a finding? Your Honor, I was the plaintiff's lawyer in Vasquez-Lopez, so I told the court about the sliding scale test that exists in a number of states, and it does not appear in the Vasquez-Lopez opinion, so I don't think that the Oregon... Then I don't know what it means. If you've got two things, they're both relevant, but only one's necessary, what is the effect of the first, if you do or don't? If you make the second, you don't have the first, what does it mean it's relevant, but not necessary? I can tell you what I think it might mean, and I think Judge Goodwin suggested some of this, when something is so bad that it is by itself unconscionable in all contexts, then... I'm not arguing for a per se rule, I'll come back to that in a little bit, but if it bars, in the context of a class action ban, if it, at contract formation, is likely to ban or make impossible to assert small claims that will arise in the course of the contract, I believe that that rises to the level of bad enough that no matter what, it's unconscionable. There may be things that are closer to the borderline, and without some procedural unconscionability, they might not be enough. So I think that there may be some element, as Oregon case law develops, of a sliding scale, but there's no express statement of a sliding scale, and there certainly is a statement that says you can find something unconscionable without finding procedural unconscionability. So what you're saying, then, is in some substantive unconscionability cases, you do need procedural unconscionability, and others you don't. That's my best guess of how Oregon law will develop. I don't, you know... But then again, they say only one is absolutely necessary. Those things seem to be somewhat inconsistent. Well, that's not your fault. Okay. And I don't think it's necessary for you to resolve this to resolve this case, because, you know, what you said earlier in one of your questions to Judge Reinhart was that for the vast mass of Oregonians, if one of them came forward to be the plaintiff in this case, this contract would be procedurally unconscionable without question. It's non-negotiable. Most people who rent videos are not lawyers who have litigated, or whose firms have litigated arbitration cases. And so if there was somebody else who was the champion for the class, we wouldn't have this discussion. So it is that Beth Creighton is the key to the courthouse door for all of those people. And the question is whether the door should be slammed, because she knows too much. And Vasquez Lopez, as you quoted earlier, Judge Reinhart, in I think the chalk argument, tells us what the answer to that is. They get away with potentially millions of dollars of small-scale fraud. There's a recent Illinois case that I cited in the supplemental authorities called Wiginton, which says it somewhat differently, but I think states a principle that Oregon has adopted, which is that the focus here is not just on the rights of the named plaintiff, it's on the rights of all of the members of the potential class. There was a question that somebody asked Mr. Reif about how arbitration would work on behalf of consumers, and he said it's important for you to know in evaluating this case that there is record evidence. This is a response to a discovery request, which is in the supplemental excerpt of record at page five, that arbitration or no arbitration, no consumer claims other than this case have been filed against Blockbuster in Oregon since at least 1999. The small size of the claim, the barriers to people asserting those claims makes it... The notion that individual claims will be brought in lieu of a class is just a fiction. And the final thing that I wanted to say, unless there are questions, is since we talked a little bit about the attorney general's procedure that led to the assurance of voluntary compliance, under Oregon law, unconscionability is measured at contract formation, so this is a post-formation event. In the same way that Vasquez Lopez said it was the evaluation of that contract as being unconscionable for having a class action ban, that the plaintiffs in that case didn't bring a class case. They brought an individual case for substantial damages, because that choice of litigation by the plaintiffs followed the formation of the contract in the same way that the attorney general's procedure followed the formation of the contract. The focus, in other words, is at the outset, before we know anything about what claims might arise, how do we evaluate this contract? This contract clearly bars the assertion of class claims. That also seemed to me a little inconsistent. I understood that the general principle under Oregon law is you look at the contract at the time of formation and decide whether it is unconscionable, but then you have these cases which take up the individual and say how much is it going to cost him, how much money does he make, and that's not following that principle. I can't completely disagree with you on that, but it's clear that in the context of the class action ban, that Vasquez Lopez strictly followed that principle, because if they looked at what happened afterwards, they'd say, so these people aren't even bringing a class action. Why do we need to deal with that issue? I recognize in some other contexts that the Court seems to look beyond the formation point. There's also some interesting footnotes in Carey v. Lincoln Loan where they say, well, we don't have this evidence from five years after formation, whatever time it was, but we'll assume it was the same as at contract formation because there's no reason to think differently. So unless there are other questions, I think I've covered... What were the terms of the settlement with the Attorney General? The terms of the settlement? The Attorney General's settlement, it's in the excerpt of the record. Blockbuster agreed to change... Blockbuster said that it was no longer charging late fees, but it charged Beth Creighton a fee for returning a video more than seven days late. Before the settlement, how they contended that they could do that wasn't at all disclosed to people or was disclosed to people in ways that would take huge amounts of effort to find out. The Attorney General required them to make better disclosures about that. We certainly agree with that. We had a claim for injunctive relief, and we withdrew that afterwards. The Attorney General's settlement also created the possibility of people getting restitution of the charge, as I tried to describe before, if they knew that they had that right and didn't give them any notice of it, and if they made a claim within 30 days. There is a paragraph in the Assurance of Voluntary Compliance, which is paragraph 11, which expressly preserves all rights that people have under other law. So, you know, the effect that the Attorney General's settlement would have on this case would be more practical than legal. That is, if somebody got money from the settlement, depending on how damages were assessed in this case, if it's ultimately certified and successful. Any money flowed to the Attorney General? I believe so, but I can't remember for sure. It's not immediately apparent from scanning through the document, which starts at page 141 of the excerpt of record and continues to page 156. Excuse me, it starts at 142. Any other questions? May it please the Court? They did get paid. Blockbuster did pay the AGs, and they split it up. The Oregon AG did get paid, and there was a payment to the Oregon AG. I don't recall exactly how much, but it was like more than a half a million dollars to the various AGs across the country, and the Oregon AG actually got a big chunk of that, because they actually did help take the lead on this issue in negotiating with Blockbuster. But I just have about a minute and a half. I wanted to focus. They did get a fund that they were then required to use efforts to locate the people who had the refunds coming. That's right. They did not. In fact, even before the AG, Blockbuster had the policy, if anyone came in to complain about it, they actually refunded it. I know he tries to use this to his advantage, but it's actually kind of telling that there are not any other plaintiffs who are complaining about this. I just wanted to real quickly focus on just that absolutely necessary language, because I think it's real important in the Vasquez-Lopez case to understand where that falls. Vasquez-Lopez talks about the substantial procedural unconscionability, and then they also then, they put in a very long quote from Carey. And Carey, that long quote, if you read that long quote, is absolutely saying you need procedural unconscionability. And then right after that Carey block quote, the court says thus, interpreting Carey, and that's where the absolutely necessary language comes in. Vasquez-Lopez just used some loose language and did not interpret that paragraph that they just cited in Carey. That loose language in Vasquez-Lopez cannot suddenly undo all of Oregon law, which requires both procedural and substantive unconscionability, including the Oregon Supreme Court in that W.L. D.C. And they talk about how unconscionability is one of prevention of oppression and unfair surprise. So I thought it was just important to point out that that's where that absolutely necessary language comes in. It's trying to interpret Carey, but if you go back and look at the quote and look at Carey, absolutely procedural unconscionability is required, and we have a complete absence of it here. Thank you, Your Honor, for your time. Thank you. The matter is now submitted. All right. Now we come to the last matter on the calendar, Morris v. Caden's design system. Thank you, Your Honor.
judges: Goodwin, Pregerson, Reinhardt